**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RECEIVED
SDNY PRO SE OFFICE

2019 NOV 20   PM 12: 42

---

GEORGE WEAVER, VERA NASEVA, LUZ CONCEPCIÓN, each on their own behalf and collectively on behalf of all others similarly-situated ; FIGHT FOR NYCHA, an unincorporated association by and through its Coördinating Committee members LOUIS FLORES and MARNI HALASA ; and LOUIS FLORES,

*Plaintiffs,*

v.

THE NEW YORK CITY HOUSING AUTHORITY ; GREGORY RUSS, Chair and CEO ; THE CITY OF NEW YORK ; BILL DE BLASIO, Mayor of the City of New York ; and GALE BREWER, individually as President of the Borough of Manhattan and acting, collectively, by and through her aide, BRIAN LEWIS,

*Defendants.*

**CLASS ACTION**
**COMPLAINT**

Case No. __19 cv 10760__

Hon. _____

---

**INTRODUCTION**

1.      Plaintiffs George Weaver ("Weaver"), Vera Naseva ("Naseva"), Luz Concepción ("Concepción"), each on their own behalf and collectively on behalf of all others similarly-situated ; Fight For NYCHA, an unincorporated association by and through its Coördinating Committee members Louis Flores ("Flores") and Marni Halasa ("Halasa") ("Fight For NYCHA") ; and Flores in his individual capacity ; bring this action to stop the Defendants the New York City Housing Authority ("NYCHA"), Gregory Russ, in his capacity the chairman and CEO of NYCHA ("Russ"), the City of New York (the "City"), Bill de Blasio, in his capacity as the mayor of the City (the "Mayor"), and Gale Brewer, in her capacity as the President of the Borough of Manhattan ("Brewer"), and acting individually and collectively, by and through her aide, Brian Lewis, in his capacity as aide to Brewer ("Lewis") from unlawfully

1

meeting in secret, closed-door meetings to plan, dispose, allocate, and contract for the real estate development of public housing assets owned and owned by the City and managed and operated by NYCHA.

2.     These public housing assets are *at immediate risk* of harm by means of the Defendants' unlawful actions to sell, dispose, lease, or contract for the long-term disposition through privatisation and/or outside management of public housing assets, which act to the detriment and harm of current and prospective, future tenants in NYCHA public housing apartment complexes.

3.     The prospective class of Plaintiffs also seeks the District Court's assistance in referring violations of the law to a prosecutor, and to require Defendants to stop the suffering and misery of public housing tenants, who face the *imminent danger* of enduring another winter without sufficient indoor heating

4.     Plaintiffs bring this action under the N.Y. Pub. Off. Law § 100-11 (the "Open Meetings Law"), U.S. Const. amend. I, N.Y. Penal Law § 240.65, N.Y. Pub. Housing Law § 150, N.Y.C. Charter § 197-C, 42 U.S.C. § 1437d(f)(2), 24 C.F.R. § 5.703(c), (d)(1) ; 24 C.F.R. § 5.703(g) ; and N.Y.C. Admin. Code § 27-2029(a), challenging violations of the law by Defendants the New York City Housing Authority ("NYCHA"), Gregory Russ, the Chair and CEO of NYCHA ("Russ"), the City of New York (the "City"), Bill de Blasio, the mayor of the City (the "Mayor"), and Gale Brewer, the President of the Borough of Manhattan ("Brewer"), acting by and through her aide, Brian Lewis ("Lewis"). The laws applicable to Defendants require Defendants to conduct the business of the Government in meetings open to the general public, to subject plans for the disposition and development of public housing assets to democratic processes. The disposition of public housing assets

2

can include transactions, like entering into agreements that transfer the management of public housing, demolition, rezoning, development, and the sale of air rights of public housing assets. Because Defendants are violating the Open Meetings Law, Defendants are forcing Plaintiffs, other NYCHA tenants, and the general public to engage in incomplete speech by restricting the public to engage in speech that lacks information about the Mayor's NYCHA Working Group. When Plaintiffs, other NYCHA tenants, and the general public associate, gather, and confer about public housing with incomplete information, their rights to free speech and freedom of assembly are being impinged.

5. Instead of complying with the law, Defendants are engaged in an unlawful process by which legally-required democratic open-meeting processes are being subverted. Defendants have formed a civic body committee (the "Mayor's NYCHA Working Group") that is an illegal substitute to legally-required democratic processes to achieve genuine community planning, as provided through the Uniform Land Use Review Procedure (the "ULURP Process"). The ULURP Process requires review by the Local community board, the Borough President, and the New York City Council, to ensure that, for example, the public both participates in a robust review of city planning projects and receives the best possible deal from the disposition and development of public housing assets.

6. The purpose of the Mayor's NYCHA Working Group is to unlawfully dispose of, and develop, the public housing assets of the New York City Housing Authority ("NYCHA"). Public housing tenants do not even constitute a majority of the panel, effectively putting individuals with conflicts of interest in control of the future of public housing in New York City. Amongst the panel members are

individuals, who have already endorsed the idea of putting public housing assets under private management before the proceedings of the unlawful Mayor's NYCHA Working Group even began or reached a conclusion.

7.    The Mayor's NYCHA Working Group is causing harm by being undemocratic and by disenfranchising the public from having any say in the disposition of public housing assets.   Amongst the surreptitious and reckless decisions expected to be made, upon information and belief, by the Mayor's NYCHA Working Group is a precedent-setting plan to demolish NYCHA public housing apartment buildings that have not been condemned for uninhabitability but that are, instead, being brought down solely to permit real estate developers from the private sector to build sky scrapers, where seventy per cent. (70%) of new apartment units will be offered to the luxury-market rate rental market.   Grave harm has already been sustained, because closed-door meetings have already taken place without democratic participation by either NYCHA tenants or the general public.   NYCHA tenants and the general public continue to sustaining this harm, because, based on information and belief, members of the Mayor's NYCHA Working Group, or their representatives, are meeting or having communication in private outside the closed-door proceedings of the Mayor's NYCHA Working Group.

8.    Upon information and belief, Co-Defendant Mayor, in concert with other actors, has engaged in a pattern or practise of soliciting contributions to his various political committees from individuals with business before Co-Defendant City, and the Mayor has awarded Government contracts to the contributors of his various political committees.   For example, Co-Defendant NYCHA have reportedly awarded a contract for the sale of air rights to one of the Mayor's political committee

contributors.[1]/  Since taking office, the Mayor has disposed of other public housing assets without seeing public input, including a grouping of several project-based, Section 8 apartment buildings (the "Section 8 Buildings Sale").[2]/  Upon information and belief, two developers involved in the Section 8 Buildings Sale have been campaign supporters or donors to the Mayor's various political committees.  There appears to be at least a conflict of interest, and the Section 8 Buildings Sale subverted democratic processes and public participation, apparently in order to reward political supports at the public expense.

9.      Without open meetings and public participation, Defendants may potentially engage in the disposition of public housing assets that are self-serving or unethical, or that appear to be self-serving or appear to be unethical, and, in either case, this could constitute defrauding the public of strategic public assets and would, thus, be unlawful.  Even if no Deeds or public housing assets are formally transferred in such closed-door meetings, the meetings will serve to facilitate the "pre-sales" of such public housing assets upon terms to be announced later and rubber-stamped for approval by the parties without significant or substantial or robust opportunities for public comment and consent.

10.     Since Plaintiffs and others similarly-situated are uninformed of prior discussions of the Mayor's NYCHA Working Group, they will sustain more

---

[1]/     *See* Shant Shahrigian, *NYC is selling 'air rights' to city housing buildings, first big deal goes to de Blasio donors*, The New York Daily News (10 Nov. 2019), https://www.nydailynews.com/news/politics/ny-de-blasio-nycha-deal-jorge-madruga-eli-weiss-20191110-pxol35ffcbhmbfyii4igf4vgpa-story.html.

[2]/     *See* Katherine Clarke, *NYCHA to sell half stake in hundreds of units to developers*, The New York Daily News (08 Dec. 2014), https://www.nydailynews.com/life-style/real-estate/city-sell-stakes-housing-projects-developers-article-1.2037359.

harm, because they have been deprived of that information.  Plaintiffs and others similarly-situated have a First Amendment right to be able to meet and confer and discuss with one another in an informed manner the matters of their own governance, and the Mayor's NYCHA Working Group is impeding their First Amendment rights.

11.     In 2019, NYCHA was found guilty of violating basic health and safety regulations of the U.S. Department of Housing and Urban Development ("HUD"), and NYCHA continues to violate HUD's basic health and safety regulations. These regulations require NYCHA to provide residents decent, safe, and sanitary housing.  Last winter, the harm that was caused was widespread.  Approximately 90 per cent. (90%) of NYCHA tenants experienced heat outages.  The harm is ongoing, since some Plaintiffs and many other NYCHA tenants have experienced heat outages already this early in the winter.  This harm will continue, because it is estimated that NYCHA needs $3 billion for essential heating systems upgrades.[3/]  Nevertheless, Defendants have not made any provision to guarantee that NYCHA tenants will be provided this winter with heating to make their apartments decent and safe from the elements.

12.     Defendants' lack of preparation for this winter is callous, but it is all the more outrageous since the Government recently settled with some of the Defendants to bring NYCHA into compliance with HUD living conditions regulations. In response to the heat crisis, the Governor of New York reportedly entered into an

---

[3/]      See Valeria Ricciulli, *As heat season begins, NYCHA needs $3B to upgrade heat and hot water systems*, Curbed (1 Oct. 2019), https://ny.curbed.com/2019/10/1/20892115/nycha-heat-season-winter-outages-hud-nyc-legal-aid-society.

agreement with NYCHA's Federal monitor to install some new heating boilers several years from now, which will do nothing to provide for heat this winter.[4]

13.     To ensure Defendants' compliance with the law ; to ensure a robust public review of any plans to dispose, or develop, public housing assets ; to end suffering and misery of suffering without heat, ; and to mitigate the ongoing effects of NYCHA's past misconduct, Plaintiffs bring this action for injunctive relief and to ask the District Court to :  (1)  make and enter an Order disbanding the Mayor's NYCHA Working Group, (2) refer all applicable violations of a criminal nature to the appropriate prosecutor, and (3) make and enter an Order compelling Defendant the City to deposit $3 billion in cash or in the form of a letter of credit from a major financial institution with the District Court, and compel the City to file a plan to make heating repairs across NYCHA as soon as practicable.

## JURISDICTION AND VENUE

14.     The District Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises in respect of public housing authority, which receives Federal funding and 42 U.S.C. §§ 1437d(j)(3).  Plaintiffs ask the District Court to take jurisdiction over the enforcement of State or City laws, specifically N.Y. Pub. Off. Law § 100-11, N.Y. Pub. Housing Law § 150, and N.Y.C. Charter § 197-C, since State or Local law enforcement officials are unlikely or unable to successfully enforce and in which the Federal Government has a significant interest, and which involves significant Government individuals, which may pose special problems for State or Local law enforcement.  The District Court also has

---

[4]     *See* Greg Smith and Gabriel Sandoval, *Cold Truth For NYCHA Tenants : No New State-Funded Boilers For Four Years Or More*, The City (11 Nov. 2019), https://thecity.nyc/2019/11/nycha-tenants-wont-see-new-state-funded-boilers-soon.html.

original subject matter jurisdiction under 28 U.S.C. § 1331, as this matter arises under the Constitution, laws, or treaties of the United States.

15.   Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2), because each Defendant resides or maintains an office within the Southern District and because a substantial part of the events giving rise to the claims in this action occurred in this District, most of the witnesses expected to be called work or reside within the Southern District, and most of the documents and evidence relevant to a hearing and determination of the issues is expected to be present within the Southern District.

## PARTIES

16.   Weaver is a tenant of Fulton Houses, a NYCHA public housing complex located in Manhattan.

17.   Naseva is a tenant of Chelsea Houses, a NYCHA public housing complex located in Manhattan.

18.   Concepción is a tenant of Chelsea Houses, a NYCHA public housing complex located in Manhattan.

19.   Co-Plaintiff Fight For NYCHA is an unincorporated association of tenants, activists, and artists that opposing any privatization of public housing assets.  Fight For NYCHA is managed by its Coöordinating Committee, and Flores and Halasa are the members of the Coöordinating Committee.

20.   Last month, Flores mailed documents to NYCHA to apply to live in public housing.

21.   Co-Defendant NYCHA is the largest public housing authority in the United States, operating 326 developments, consisting of 2,462 residential buildings

with approximately 175,000 apartments, located throughout New York City. NYCHA's operating budget for public housing is about $2.3 billion, roughly $900 million of which are public housing funds provided by HUD.  HUD also provides NYCHA more than $300 million per year in capital funding.  The number of NYCHA residents ranges between 400,000 and 600,000, and approximately 90% of NYCHA's residents are people of color, who, at all relevant times, have been, are, and are reasonably expected to be disproportionately affected by the existence of the Mayor's NYCHA Working Group and the harm it intends to cause to these tenants.

22.      Co-Defendant Russ is the Chair and CEO of NYCHA.  Upon information and belief, Russ is responsible for the actions of NYCHA that are being challenged in this action.

23.      Co-Defendant the City is a Municipal corporation organised and existing under the laws of the State of New York.

24.      Co-Defendant Mayor is the mayor of the City of New York, and he is responsible for forming the Mayor's NYCHA Working Group that is in violation of the law and who exercises authority, *inter alia*, to issue "oversides" of the New York City Zoning Resolution and to set policy that approves of plans for the disposition, and real estate development, of public housing assets.

25.      Co-Defendant Gale Brewer ("Brewer") is a member of the Mayor's NYCHA Working Group.  Her countenancing of the acts described in this Complaint will be described more fully in the Class Allegations, below.  Brewer has an important role as President of the Borough of Manhattan, because, under the ULURP Process, she has a statutory role in the lawful disposition of public housing assets.

For purposes of some of the allegations in this action, Brewer acts by and through an aide, Brian Lewis ("Lewis").

## STATUTORY AND REGULATORY FRAMEWORK

26.     Unless subject to executive session, all meetings of a public body must be open to the general public under State law. *See* N.Y. Pub. Off. Law § 100-11.

27.     A person is guilty of unlawful prevention of public access to records when, with intent to prevent the public inspection of a record pursuant to Article 6 of the Public Officers Law, the person willfully conceals any such record. Unlawful prevention of public access to records is a violation. *See* N.Y. Penal Law § 240.65.

28.     Real estate development plans for public housing must be approved by the local Legislative body and by the local Planning Commission, if any. *See* N.Y. Pub. Housing Law § 150.

29.     The disposition of public housing assets must be subject to ULURP Process. Under the Charter of the City of New York, the disposition of public housing assets must be completed with the consultation and advice of the community, including the City Planning Commission, the New York City Council, the Borough President, and the Local community board. *See* N.Y.C. Charter § 197-C.

30.     Public housing's central purpose is to provide decent, safe, and sanitary housing to lower-income families. Therefore, Congress directed HUD, in the U.S. Housing Act, as amended, to promulgate "housing quality standards . . . that ensure that public housing dwelling units are safe and habitable." 42 U.S.C. § 1437d(f)(2). HUD, in turn, imposed a core regulatory requirement that all public housing "be decent, safe, sanitary, and in good repair." 4 C.F.R. § 5.703

(the "decent, safe, and sanitary" regulations) ; *see also* 24 C.F.R. Part 902.  These requirements are also reflected in the Annual Contributions Contract that governs certain HUD payments to NYCHA.

31.     HUD's "decent, safe, and sanitary" regulations require a public housing agency to provide a heating system that is "functionally adequate, operable, and in good repair," 24 C.F.R. § 5.703(c), (d)(1), and to comply with city building and maintenance codes related to heat, 24 C.F.R. § 5.703(g).  New York City long mandated that during winter, when outside temperatures fall below 55°F during the day or 40°F at night, NYCHA must maintain an indoor temperature of at least 68°F during the day and 55°F at night.  *See* N.Y.C. Admin. Code § 27-2029(a).  Since October 2017, the standard has become even stricter overnight, requiring an indoor temperature of 62°F at all times, regardless of outdoor temperatures.  *Id.*

## GENERAL FACTUAL ALLEGATIONS

32.     The Government conducted an investigation and found that NYCHA had been violating physical condition standards set by HUD regulations.  In respect of the physical condition standards violations, "in a Consent Decree executed June 11, 2018, NYCHA made admissions regarding, among other things, deficiencies in physical conditions with respect to lead, mold, heating, elevators and pests, untrue statements to HUD regarding the conditions of NYCHA properties, and practices with regard to Public Housing Assessment System inspections," according to the Settlement Agreement, dated as of Jan. 31, 2019, signed by some of the Co-Defendants in order to bring to an end the Government's investigation of Defendant NYCHA.

33.     The Settlement Agreement provided less than $3 billion, or approximately 9 cents on the dollar for outstanding capital repairs, which are estimated to total $32 billion. But this Settlement Amount was to be paid out over a period of ten (10) years, meaning that the City would only be funding approximately 1 cent on the dollar for outstanding capital repairs per year. Because the Mayor has resisted providing NYCHA with additional funding, this funding has been and is inadequate to provide NYCHA residents with decent and safe housing. Making matters worse, the Mayor has proposed a plan to put one third (1/3) of NYCHA (the "Mayor's Partial Privatisation Plan") into the hands of private landlords under a dangerous HUD program known as Rental Assistance Demonstration ("RAD"). The Mayor's Partial Privatisation Plan also seeks to rezone plots of public housing campuses, demolish public housing buildings, and to sell the air rights of public housing apartment buildings. As documented, the HUD program that the Mayor wants to use results in rent increases, rescreenings, stricter house rules, and evictions.[5]

34.     It was recently shown that Ocean Bay Apartments, the Mayor's showcase for converting NYCHA public housing development under RAD, evicted the most tenants over a period of analysis performed by the news Web site City Limits. Ultimately, seven per cent. (7%) of its units were evicted.[6] But the funding

---

[5]     See National Housing Law Project, *An Advocate's Guide to Public Housing Conversions Under Component 1 of the Rental Assistance Demonstration*, NHLP (Jan. 2016), http://nhlp.org/files/RAD%20Advocacy%20Guide%202.0%20FINAL%20with%20Appendix.pdf.

[6]     See Harry DiPrinzio, *Hundreds of NYCHA Evictions Raise Questions About Process*, City Limits (14 Aug. 2019), https://citylimits.org/2019/08/14/nycha-evicitons-rad-oceanbay/.

from this dangerous plan will take years to materalise, thus denying NYCHA residents the funding necessary for NYCHA to provide basic needs, like working heating systems.

35.     Although many of Mayor's policies create legitimate disagreement, that is not the focus of this lawsuit.  Plaintiffs contend that the exclusion from the meeting process is illegal and unconstitutional and that the business discussed, the privatisation and sell-off of NYCHA housing stock, arises as a harm which results in the disparate treatment of people of color through displacement, denial of affordable housing, and living conditions which are substandard and deny NYCHA tenants their full legal and human rights.

36.     Upon information and belief, the Mayor issues "overrides" of the New York City Zoning Resolution in order to push through the disposition, or real estate development, of public housing assets instead of complying with the law. He has attempted this before, at the Holmes Towers in the Upper East Side neighborhood in the Borough of Manhattan until that plan was stopped by lawsuit filed by Brewer over its unlawfulness.  Upon information and belief, the Mayor's intention was originally to use "overrides" to dispose of, and develop, public housing assets at the Fulton Houses public housing complex, located in the Chelsea neighborhood in the Borough of Manhattan.  On or about Apr. 25, 2019, the Mayor's Partial Privatisation Plan was revealed to target Fulton Houses.[7]

---

[7]     *See* Luis Ferré-Sadurní, *To Save Public Housing, New York Warily Considers a New Approach: Tear Some Down*, The New York Times (25 Apr. 2019), https://www.nytimes.com/2019/04/25/nyregion/nycha-fulton-houses.html.

37.     Plaintiffs have been engaged in demonstrations, workshops, and press conferences to stop the Mayor's Partial Privatisation Plan from proceeding at Fulton Houses due to the dangerous conditions that it would create.  Plaintiffs have been arguing that the Mayor's Partial Privatisation Plan would lead to similar eviction rates as experienced at Ocean Bay Apartments.  Since public housing offers the last true form of affordable housing to people making very low incomes, residents evicted from NYCHA are guaranteed to face homelessness.   Due to Plaintiff's efforts, Plaintiffs succeeded in forcing the Mayor to postpone his use of an expected "override" as authorisation to issue a request for proposal for the partial demolition, rezoning, and disposition of public housing assets at Fulton Houses.

38.     To counteract Plaintiffs' protests and to advance the Mayor's Partial Privatisation Plan, the Mayor formed the Mayor's NYCHA Working Group on or about Oct. 19, 2019.[8]  There was no democratic process followed for the formation of the Mayor's NYCHA Working Group.   The Mayor's Partial Privatisation Plan involves setting a savage precedent :   the demolition of NYCHA public housing apartment buildings that have not been condemned for uninhabitability.  Instead, the two apartment buildings being targeted for demolition will be brought down solely to permit real estate developers to build sky scrapers that would offer seventy per cent. (70%) of new apartment units to the luxury-market rate rental market. Establishing such a precedent without public input, as required by the law, is reckless and corrupt, since it dishonestly deprives all NYCHA tenants and the

---

[8]     *See* Michael Gartland, *Mayor de Blasio launches 'working group' to hash out NYCHA plans in Chelsea*, The New York Daily News (10 Oct. 2019), https://www.nydailynews.com/new-york/ny-de-blasio-nycha-fulton-chelsea-elliot-private-developer-20191010-aajo3uv5hvc7hdaxiv2zznip3q-story.html.

general public, who, collectively, as taxpayers and citizens of the City of New York, have an interest in maintaining and keeping NYCHA in the public sector.

39.     To keep the proceedings of the Mayor's NYCHA Working Group secret, the meetings have taken place in unknown locations that have been closed to NYCHA tenants and the public.  As a result, an unknown number of meetings of the Mayor's NYCHA Working Group have already taken place.  By conducting closed-door meetings of the Mayor's NYCHA Working Group, Defendants and other elected Government officials and/or their representatives have deprived Plaintiffs, other NYCHA residents, and the general public from having any participation in discussions about the possible disposition and development of public housing assets.  To make matters worse, the Mayor's Working Group instituted a gag rule, preventing the few participants from publicly speaking about its closed-door proceedings.[9]   Furthermore, upon information and belief, Plaintiffs allege that members of the Mayor's NYCHA Working Group, or their representatives, are privately meeting or engaging in communication in addition to their secret meetings, and Plaintiffs, NYCHA residents, and the general public are denied any notice, knowledge, or information about those additional private meetings or communication.  These acts are undemocratic, and they deprive Plaintiffs, NYCHA residents, and the general public from both :  (i) participating in a robust process to determine whether NYCHA should dispose or develop public housing assets and (ii) being able to meaningful meet, confer, and discuss with one another about the future of public housing in New York City.

---

[9]      *See* Community Control of Land Use New York, Twitter (25 Oct. 15, 2019, 9:20 PM EST), https://twitter.com/CCLandUseNY/status/1187901757755670529.

40.     On Thursday, Oct. 24, 2019, at approximately 6:30 pm, at Hudson Guild in the Chelsea neighborhood of Manhattan, the Mayor's NYCHA Working Group had its first secret meeting.  Flores snuck in, uninvited, and, once uncovered, attempts were made by representatives of the Mayor's NYCHA Working Group or related officials, including by Robert Atterbury, an aide to U.S. Rep. Jerrold Nadler (D-NY 10) ; Leroy Williams, an officer of Defendant NYCHA ; and Howard Redmond, the ranking member of the Mayor's private New York Police Department security detail, to coerce Flores to leave or risk arrest.  Despite repeated threats of arrest, Flores refused to leave and was able to remain after invoking the possibility that his arrest would be put on the front page of the next morning's edition of the *New York Post*.[10/]  Halasa, another member of Fight For NYCHA, gained entry by informing police officers that she needed to provide medication to Flores.

41.     Outside the meeting, NASEVA and others were denied entry to the first meeting of the Mayor's NYCHA Working Group.  Because the Mayor's NYCHA's Working Group met in secret in a manner that was closed to the general public, NASEVA and others similarly-situated were denied participation in proceedings to determine the future of public housing in New York City.

42.     Members of Fight For NYCHA were able to document Defendants' plans to demolish two apartment buildings at Fulton Houses, the placing of Fulton Houses into the hands of a private landlord, the rezoning of Fulton Houses to permit

---

[10/]     *See* Progress New York, *NYPD threaten Fight For NYCHA member with arrest at Bill de Blasio's NYCHA Working Group*, YouTube (25 Oct. 2019), https://youtu.be/mbdON71IWew.

the construction of new high-rise apartment buildings, and the sale of air rights.[11/] Had Flores and Halasa not "crashed" the Mayor's NYCHA Working Group, the public would have been deprived of any knowledge or information about the Mayor's plans for Fulton Houses. Defendants plans for Fulton Houses involve the disposition and real estate development of public housing assets, but the process by which that decision will be made is not fully open to Plaintiffs, other NYCHA residents, or the general public. As a result, Defendants have caused Plaintiffs harm and violated Plaintiffs' rights by denying them an opportunity to participate in the proceedings of the Mayor's NYCHA Working Group.

43.    As the first, secret meeting of the Mayor's NYCHA Working Group was wrapping up, facilitators were taking topics for the agenda of the second, secret meeting. Flores raised his hand, but facilitators never picked on him to speak. Flores had to speak out of turn to suggest that the Mayor's NYCHA Working Group put legality on the agenda to discuss, referring the topic to Brewer, because Brewer had to sue NYCHA, the City, and the Mayor to stop the disposition and development of public housing assets at Holmes Towers that had been approved without being subjected to the ULURP Process. It is not known if that subject was ever discussed by the Mayor's NYCHA Working Group.

44.    It is not known why Brewer is participating in, much less countenancing, the Mayor's NYCHA Working Group when she knows that the

---

[11/]    *See* Progress New York, *Vicki Been presentation for Demolition, Infill, RAD, MIH, and Air Rights Sale at NYCHA Working Group,* YouTube (25 Oct. 2019), https://youtu.be/WgpOHiqbZ10.

disposition and real estate development of public housing assets must be subject to the ULURP Process.

45.     On Tuesday, Oct. 29, 2019, on or about 6:30 pm, at P.S. 33 in the Chelsea neighborhood of Manhattan, the Mayor's NYCHA Working Group had its second secret meeting.    Member of three NYCHA-related community groups, namely, Fight For NYCHA, Holmes-Isaacs Coäition, and Justice For All Coälition ; Plaintiffs Weaver, Naseva, and Concepción ; tenants of Harborview Terrance public housing complex ; representatives of the media ; Lindsey Boylan, a candidate for the U.S. House of Representatives ; and the general public were denied entry to the second meeting of the Mayor's NYCHA Working Group.    Leroy Williams, who attempted to coerce Flores into leave the first meeting, blocked the entrance to the P.S. 33, preventing Plaintiffs, other NYCHA residents, and the general public from making entry to the public school building.[12/]    As a result, Defendants have caused Plaintiffs harm and violated Plaintiffs' rights by denying them an opportunity to participate in the proceedings of the Mayor's NYCHA Working Group.

46.     The Mayor's Partial Privatisation Plan won't immediately raise any material funding for NYCHA to make progress on addressing its estimated $32 billion backlog in capital repairs.    It will take years for substantial revenue to be raised from the Mayor's Partial Privatisation Plan.    As a result, Defendants offer NYCHA residents no plan to provide adequate and consistent heat during the winter, even though approximately to 90 per cent. (90%) of NYCHA residents experienced

---

[12/]     *See* Community Control of Land Use New York, *Press conference and protest of the Mayor's Working Group that intends to privatize public housing ...*, Facebook (29 Oct. 2019), https://www.facebook.com/CCLandUseNY/videos/2990577437833541/.

heat outages last winter.[13]/  Plaintiffs now predicting a repeat of those conditions this year, because NYCHA has not been adequately funded by the City.  The best that has been done is that the Federal Monitor appointed to oversee NYCHA promises to install some new heating boilers several years from now.  Consequently, NYCHA tenants will be left out of the cold.

### FACTUAL ALLEGATIONS OF INDIVIDUAL PLAINTIFFS

#### George Weaver

47.     Weaver lives in Fulton Houses.  He was denied a position on the Mayor's NYCHA Working Group, because there was no democratic process to determine participants.  Weaver was locked out of the second, secret meeting of the Mayor's NYCHA Working Group.   As a tenant of Fulton Houses, he has already experienced heat and hot water outages.[14]/  One recent morning, when he had to hot water, he had to boil water on his kitchen stove in order to bathe.

#### Vera Naseva

48.     Naseva lives in Chelsea Houses.  She was denied a position on the Mayor's NYCHA Working Group, because there was no democratic process to determine participants.  Naseva was locked out of the first and second, secret meetings of the Mayor's NYCHA Working Group.

---

[13]/     *See* Nolan Hicks, *Nearly 90 percent of NYCHA apartments lost heat, hot water during winter*, The New York Post (11 Aug. 2019), https://nypost.com/2019/08/11/nearly-90-percent-of-nycha-apartments-lost-heat-hot-water-during-winter/.

[14]/     *See* Luis Ferré-Sadurní, Twitter (12 Nov. 2019, 4:50 PM EST), https://twitter.com/luisferre/status/1194372010857631745.

<u>Luz Concepción</u>

49.     Concepción lives in Chelsea Houses. She was denied a position on the Mayor's NYCHA Working Group, because there was no democratic process to determine participants. Concepción was locked out of the first and second, secret meetings of the Mayor's NYCHA Working Group.

<u>Fight For NYCHA, an unincorporated association</u>
<u>by and through its Coördinating Committee members</u>
<u>Louis Flores and Marni Halasa</u>

50.     Fight For NYCHA was organised to preserve and expand public housing in New York City. Members began to organise in Fulton Houses shortly after the Mayor's announcement that he was proposing to demolish, rezone, develop, and dispose of public housing assets at Fulton Houses. Since then, members of Fight For NYCHA have organised tenant meetings, political workshops, town halls, direct actions, and social media campaigns to fully-fund NYCHA through a People's Budget for Housing, Justice, and Dignity (the "People's Budget").

<u>Louis Flores</u>

51.     In his individual capacity Flores mailed documents in October 2019 to apply to live in NYCHA.

**CLASS ALLEGATIONS**

52.     Pursuant to Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs bring this action individually and on behalf of themselves and a class of similarly-situated individuals who are : Current and future residents of NYCHA, with a subclass consisting of tenants, who were or are being denied heat during the class period.

53.     Members of the class are so numerous that joinder of all members is impracticable.

54.     Upon information and belief, NYCHA housing developments routinely lose heat during winter, depriving several thousand residents of a heating system that is "functionally adequate, operable, and in good repair," as required by law. Approximately to 90 per cent. (90%) of NYCHA tenants experienced heat outages last winter.[15] Upon information and belief, Plaintiff Fight For NYCHA predicts that this winter will be a repeat of last winter in respect of heat outages.

55.     This case raises common questions of law and fact, including but not limited to the following :

a.      Whether Defendants' use of secret meetings that are closed to the general public of the Mayor's NYCHA Working Group to review the disposition and development of public housing authority assets violates the Open Meetings Law, N.Y. Pub. Off. Law § 100-11 ;

b.      Whether Lewis, acting in his capacity as an aide to Brewer, in refusing to provide notice, knowledge, and information about the schedule of the proceedings of the Mayor's NYCHA Working Group violates N.Y. Penal Law § 240.65

c.      Whether Defendants' use of the Mayor's NYCHA Working Group to review the disposition and development of public housing authority assets violates N.Y. Pub. Housing Law § 150 ;

d.      Whether Defendants' use of the Mayor's NYCHA Working Group to review the disposition and development of public housing authority assets violates N.Y.C. Charter § 197-C ;

---

[15]     *See* Nolan Hicks, *Nearly 90 percent of NYCHA apartments lost heat, hot water during winter*, The New York Post (11 Aug. 2019), https://nypost.com/2019/08/11/nearly-90-percent-of-nycha-apartments-lost-heat-hot-water-during-winter/.

e.   Whether Co-Defendants NYCHA, Russ, the City, and the
Mayor's plans or contracts to dispose of public housing
assets, including the Section 8 Buildings Sale ; the RAD
conversions of Ocean Bay Apartments, Betances Houses,
and other NYCHA public housing complexes ; and the sale
of air rights at Ingersoll Houses, Fulton Houses, and other
NYCHA public housing complexes through unknown
processes violates N.Y. Pub. Housing Law § 150 and/or
N.Y.C. Charter § 197-C ;

f.   Whether NYCHA policies, practices, and procedures for
responding to heat complaints and for performing repairs
are inadequate to meet proposed class members' needs ;

g.   Whether NYCHA's lack of funding is the primary cause of
NYCHA's inability to make repairs in response to heat
complaints ;

h.   Whether, in failing to provide apartments with heat during
the winter and failing to reasonably modify its policies,
practices, and procedures to provide apartments with heat
during the winter, NYCHA violates the 42 U.S.C.
§ 1437d(f)(2), 24 C.F.R. § 5.703(c), (d)(1) ; 24 C.F.R.
§ 5.703(g) ;

i.   Whether, in failing to provide apartments with heat during
the winter and failing to reasonably modify its policies,
practices, and procedures to provide apartments with heat
during the winter, NYCHA violates the N.Y.C. Admin. Code
§ 27-2029(a) ; and

j.   Whether, in failing to provide apartments with heat during
the winter and failing to reasonably modify its policies,
practices, and procedures to provide apartments with heat
during the winter, NYCHA violates the HUD Settlement
Agreement.

56.   The Mayor's Partial Privatisation Plan involves the proposed
demolition of two public housing buildings in Fulton Houses not because the
buildings are condemnable for being uninhabitable but for the sole purpose of
rezoning portions of the Fulton Houses public housing complex under Mandatory
Inclusionary Housing ("MIH") to construct residential rental sky scrapers that would

offer 70 per cent. (70%) of its units to tenants seeking luxury/market rate apartments.

57.     The Mayor's Partial Privatisation Plan also involves the taking of parking lots, green spaces, gardens, children's playgrounds, and other outdoor open spaces for the rezoning, construction, and real estate development of new Mixed-Use Buildings ("Infill Development").

58.     One such Infill Development was planned for the Holmes Towers in the Upper East Side. Co-Defendant Brewer, in her official capacity as President of the Borough of Manhattan, has filed a lawsuit in State Court, opposing that Infill Development, because Co-Defendants the City, the Mayor, and NYCHA, as well as Russ's predecessor, used an inferior and unlawful substitute for the ULURP Process to authorize the Infill Development at Holmes Towers. The Co-Defendants in that State Court action have stipulated not to undertake actions that would circumvent the ULURP Process.     For unknown reasons, Brewer participates in, and countenances, the use of the Mayor's NYCHA Working Group to circumvent ULURP for plans for Fulton Houses.

59.     The Mayor's Partial Privatisation Plan also involves the sale of air rights of NYCHA public housing complexes ("Public Housing Asset Disposition"). Co-Defendants the Mayor and NYCHA have announced plans to close on a plan for the Public Housing Asset Disposition at the Ingersoll Houses public housing complex in Brooklyn.[1/]  That Public Housing Asset Disposition, which did not go through the ULURP Process, is expected to be awarded to "to builders who gave de Blasio's campaigns nearly $20,000" in "what appears to be a textbook 'pay-to-play' move." *Supra.*  Plaintiffs allege that Co-Defendants invite corruption, or at least the

23

appearance of corruption, by conducting the disposition and development of public housing assets in secret, closed-door meetings through an inferior and unlawful substitute to the ULURP Process.

60.     Indeed, Flores filed a Civilian Crime Report with the U.S. Attorney's Office on Nov. 4, 2019, reporting allegations of the unlawful activities of the Mayor's NYCHA Working Group, many of the Co-Defendants, and other actors.

61.     The claims of the named Plaintiffs are typical of the class in that Plaintiffs and each member of the class are current and future residents of NYCHA, who have been affected by the allegations of the violations of the law by Defendants.

62.     The named Plaintiffs will fairly and adequately represent interests of the class, because their interests do not conflict with the interests of other class members they seek to represent.

63.     Plaintiffs have demonstrated an intention and the political independence to prosecute this action vigorously.

64.     Plaintiffs are searching for capable litigators with significant experience in class-action litigation in Federal Court, including matters related to Government transparency, real estate zoning, and land use.

65.     Defendants have acted on grounds generally applicable to the Claass by :

      a.     Failing to use the ULURP Process for the disposition, and real estate development, of public housing assets ;

      b.     Failing to publicly provide information about the meetings of the Mayor's NYCHA Working Group ;

      c.     Failing to provide apartments with heat during the winter ; and

    d.      Failing to provide adequate funding so that NYCHA can meet its obligations to provide apartments with heat during the winter in the apartments of the proposed Class members, as applicable.

66.    Declaratory and injunctive relief are appropriate with respect to the class as a whole.

67.    A class-action is the exclusive method by which the interests of all affected persons can be adequately protected.

## CAUSES OF ACTION

## COUNT I

### Violation of the Open Meetings Law

### (Against All Co-Defendants)

68.    Plaintiff realleges and incorporates by reference the preceding Paragraphs of this Complaint as if fully stated herein.

69.    The laws of the State of New York provide the public with the right to engage in democratic participation in the matters of their own governance by requiring meetings of Government bodies to be open to the general public. *See* N.Y. Pub. Off. Law § 100-11.

70.    Defendants had a duty to hold all of the meetings of the Mayor's NYCHA Working Group to be open to the general public. However, Defendants have violated their duty to comply with the Open Meetings Law.

71.    As a result, Plaintiffs and others similarly-situated have suffered irreparable harm, because they have been denied opportunities to-date to fully-participate in the secret, closed meetings of the Mayor's NYCHA Working Group. This has prevented them from having a say in determinations, agreements, or policies made or formulated by the Mayor's NYCHA's Working Group.

72.     The shut-out of Plaintiffs and others similarly-situated threatens to deny the general public from having any opportunity to fully-participate in all of the secret and closed meetings yet to be held by the Mayor's NYCHA Working Group.

73.     Fight For NYCHA has protested the nature of the secret and closed meetings held by the Mayor's NYCHA Working Group, and but Defendants remain unmoved and continue to flagrantly violate the Open Meetings Law.

74.     Plaintiffs and others similarly-situated are being irreparably harmed by reason of Defendants' unlawful conduct.

## CAUSES OF ACTION

## COUNT II

### Violation of the First Amendment

### (Against All Co-Defendants)

75.     Plaintiff realleges and incorporates by reference the preceding Paragraphs of this Complaint as if fully stated herein.

76.     The U.S. Constitution grants citizens the rights to free speech and free assembly. *See* U.S. Const. amend. I.  When citizens associate, gather, and confer about matters about their own governance, they need information in order to speak in a free and informed manner.

77.     As a result of the secret, closed meetings of the Mayor's NYCHA Working Group, the First Amendment Plaintiffs and others similarly-situated are forced to engage in incomplete speech.  The proximate cause of the impinged First Amendment rights of Plaintiffs and others similarly-situated is the unlawful actions by Defendants.  This is harm that has been sustained, is ongoing, and will continue if the Mayor's NYCHA Working Group is permitted to continue its unlawful acts.

## COUNT III

### Violation of N.Y. Penal Law § 240.65

### by Failing to Provide Access to Public Records or Information

**(Against Co-Defendant Brewer acting by and through Lewis)**

78.    Plaintiff realleges and incorporates by reference the preceding Paragraphs of this Complaint as if fully stated herein.

79.    Co-Defendant Brewer by and through Lewis had a duty to provide public records or information.  However, Defendant Brewer by and through Lewis violated her duty to comply with the law.

80.    Co-Defendant Brewer by and through Lewis violated the law when Lewis denied the request made by Plaintiff Fight For NYCHA by and through Flores when Flores requested the full, remaining schedule of the Mayor's NYCHA Working Group.  *See* Ex. A.  *See* N.Y. Penal Law § 240.65.  Halasa requested the same information, and, again,  Co-Defendant Brewer by and through Lewis denied the request. *See* Ex. B. As a result of the violation of law, Plaintiffs and others similarly-situated suffered irreparable harm, because they were denied information about other, secret meetings of the Mayor's NYCHA Working Group.

81.    Defendant Brewer and the other Defendants are Elected or pubic officials.  Upon information or belief, they are aware, or should be aware, of their obligations to conduct the business of Government in an open and transparent manner.  The Co-Defendants had a duty to comply with the law, but Co-Defendants breached their duty to comply with the law.

82.     By denying the request to produce public records or information to Plaintiff Fight For NYCHA about the full, remaining schedule of the Mayor's NYCHA Working Group, the office of Defendant Brewer engaged in unlawful conduct.

**COUNT IV**

Violation of N.Y. Pub. Housing Law § 150

by unlawfully using the Mayor's NYCHA Working Group

to subvert public participation in the disposition of public housing assets

**(Against All Co-Defendants)**

83.     Plaintiff realleges and incorporates by reference the preceding Paragraphs of this Complaint as if fully stated herein.

84.     Each of the Co-Defendant had a duty to comply with the law. However, each of the Co-Defendants violated their duty to comply with the law.

85.     Section 150 of N.Y. Pub. Housing Law provides that the prior approval of the local legislative body and of the planning commission is "requisite to the final adoption or approval by an authority or municipality of a plan or project."

86.     Under controlling New York Court of Appeals case law, any essential or significant modification to a public housing plan or project requires approval under Section 150.

87.     The Section 8 Buildings Sale, the Mayor's Partial Privatisation Plan ; any demolition of Fulton Houses and other NYCHA public housing complexes, complete or partial ; any Infill Development ; any rezoning of Fulton Houses and other NYCHA public housing complexes, complete or partial ; the RAD conversions of Ocean Bay Apartments, Betances Houses, and other NYCHA public housing complexes ; and the sale of air rights at Ingersoll Houses, Fulton Houses, and other

NYCHA public housing complexes therefore required or requires prior approval of the Local legislative body and of the planning commission, if any, pursuant to Section 150 of N.Y. Pub. Housing Law.

88.    For cities of one million or more people, such as the City of New York, "local legislative body" means the "officer or agency vested with power under the charter of such city, or by other law, to act pursuant to this chapter." Under the City Charter, "[h]ousing and urban renewal plans and projects pursuant to city, state and federal housing laws" are subject to the ULURP Process. Thus, State law requires NYCHA to submit any public housing plan or project, or essential or significant modification thereto, to the ULURP Process.

89.    Because the Mayor formed, and the other Co-Defendants are participating on, the Mayor's NYCHA Working Group, they are openly violating Section 150 of N.Y. Pub. Housing Law. Consequently, the Co-Defendants' violations of the law render the Mayor's NYCHA Working Group an inferior and unlawful substitute for the ULURP Process, making the Mayor's NYCHA Working Group an unlawful Government body that is engaged in unlawful conduct. There is also a high likelihood that Defendant Mayor, the City, NYCHA, and Russ (or his predecessors) may have violated the Section 150 of N.Y. Pub. Housing Law in respect of past or current plans or contracts to dispose of public housing assets.

90.    As a result of the Co-Defendants' violations of the law, Plaintiffs and others similarly-situated have suffered irreparable harm. The Mayor's NYCHA Working Group is an inferior and unlawful substitute to the ULURP Process. Plaintiffs, others similarly-situated, and the general public are being denied a robust

public review of the Mayor's Partial Privatisation Plan and the demolition, and development, of Fulton Houses and other NYCHA public housing developments.

**COUNT V**

Violation of N.Y.C. Charter § 197-C

by unlawfully using the Mayor's NYCHA Working Group

as an unlawful substitute to the ULURP Process

**(Against All Co-Defendants)**

91.     Plaintiff realleges and incorporates by reference the preceding Paragraphs of this Complaint as if fully stated herein.

92.     Each of the Co-Defendant had a duty to comply with the law. However, each of the Co-Defendants violated their duty to comply with the law.

93.     Section 197-C requires provides that the avenue for the disposition of public housing assets, pursuant to Section 150 of N.Y. Pub. Housing Law, is the ULURP Process.   The ULURP Process provides for a formal review period and opportunity to comment and offer recommendations by the Local community board and the Borough President.

94.     The Section 8 Buildings Sale, the Mayor's Partial Privatisation Plan ; any demolition of Fulton Houses and other NYCHA public housing complexes, complete or partial ; any Infill Development ; any rezoning of Fulton Houses and other NYCHA public housing complexes, complete or partial ; the RAD conversions of Ocean Bay Apartments, Betances Houses, and other NYCHA public housing complexes ; and the sale of air rights at Ingersoll Houses, Fulton Houses, and other NYCHA public housing complexes therefore required or requires prior review by,

and approval of, the Local community board, the Borough President, and the New York City Council, pursuant to Section 197-C.

95.     Instead of submitting the Mayor's Partial Privatisation Plan and the proposal or plan for the disposition, or the development, of Fulton Houses to the ULURP Process, the Mayor empaneled an unlawful Mayor's NYCHA Working Group to subvert the ULURP Process.

96.     The law is clear that local legislative approval through ULURP is required here.  The New York Court of Appeals has held that under the N.Y. Pub. Housing Law, such approval is required for modifications to public housing projects that affect their "essence."  Putting one-third (1/3) of NYCHA's public housing apartments under the management of private landlords that will result in rent increases, greater harassment and discrimination, and higher rates of evictions that will disproportionately affect people based on race, leading to drastic changes in tenant populations certainly changes the essence of NYCHA public housing developments.  Furthermore, demolishing two buildings, constructing a new tower by condemning a children's playground and then erecting new high-rise towers, and selling air rights to enable new community-crushing development in the area circumscribing the Fulton Housing public development complex, as is proposed and planned by Defendants, will definitively change the "essence" of Fulton Houses.

97.     For having formed an inferior and unlawful substitute to the ULURP Process with the formation of the Mayor's NYCHA Working Group and with Defendants' participation in this unlawful Government body, Defendants are in violation of the City Charter.  There is a high likelihood that Defendant Mayor, the City, NYCHA, and Russ (or his predecessors) may have violated the City Charter in

respect of past or current plans or contracts to dispose of public housing assets.  As a result of Co-Defendants' violations of the law, Plaintiffs, others similarly-situated, and the general public are being denied a robust public review of the Mayor's Partial Privatisation Plan and the demolition, and development, of Fulton Houses and other NYCHA public housing developments.

## COUNT VI

### Violation of 42 U.S.C. § 1437d(f)(2)

### by being so underfunded it cannot provide heat to tenants

### (Against Co-Defendants the City, the Mayor, NYCHA, and Russ)

98.     Plaintiff realleges and incorporates by reference the preceding Paragraphs of this Complaint as if fully stated herein.

99.     Co-Defendant the City, the Mayor, NYCHA, and Russ had a duty to comply with the law.  However, each of these Co-Defendants violated their duty to comply with the law.  These violations of the law took place after "NYCHA made admissions regarding, among other things, ... heating, ...," according to the Settlement Agreement signed by some of the Defendants in order to bring to an end the Government's investigation of Defendant NYCHA.

100.     Despite laws, regulations, and the Settlement Agreement requiring NYCHA to provide heat, NYCHA fails to provide "decent, safe, and sanitary" housing because of systemic violations involving lead paint ; mold ; infestations of rats, mice, and cockroaches ; and chronic elevator outages in high-rise buildings.  Of central concern to this action is NYCHA's past, continuing, and expected widespread lack of heat during winter.  The Government has made findings that NYCHA has concealed

these violations from the public and from HUD, the latter by undermining HUD inspections and thereby rendering the inspection results unreliable.

101.    Despite HUD regulations and the City of New York's mandate for the provision of indoor heating when temperatures fall below certain levels, NYCHA fails to meet these standards.

102.    Given the Government's pattern and practise of refusing to comply with the law, Plaintiffs and others-similarly situated are denied heat.  The proximate cause is NYCHA's lack of adequate funding to afford investing $3 billion in heating system upgrades.

### COUNT VI

Violation of 24 C.F.R. § 5.703(c), (d)(1) ; 24 C.F.R. § 5.703(g) ; and

N.Y.C. Admin. Code § 27-2029(a)

by being so underfunded it cannot provide heat to tenants

**(Against Co-Defendants the City and the Mayor)**

103.    Plaintiff realleges and incorporates by reference the preceding Paragraphs of this Complaint as if fully stated herein.

104.    Co-Defendants the City and the Mayor had a duty to comply with the law.  NYCHA is requited to maintain heating systems that are "functionally adequate, operable, and in good repair." 24 C.F.R. § 5.703(c).  However, each of Co-Defendants the City and the Mayor have violated their duty to comply with the law by leaving NYCHA severely underfunded.

105.    As a result of NYCHA's lack of funding, NYCHA residents are provided inadequate heat during the winter, leading to frigid apartment temperatures that threaten residents' health.  This represents a public health

emergency, particularly for infants, seniors, and people living with illnesses, diseases, or disabilities.

106.   These conditions also lead to potential fire hazards, since NYCHA residents desperately turn to dangerous self-help alternatives, such as leaving on gas or electric stoves space or using space heaters that have, in the past, caused fires in public housing apartments, fire damage to public housing complexes, injuries and deaths to tenants and/or their pets.

107.   As a result of Co-Defendants's lack of financial support for NYCHA, NYCHA tenants unnecessarily suffer during winter from the lack of heat.  This harm is irreparable, since the lack of heat can cause pain, suffering, and misery, not to mention injuries to health and or property.

108.   It was estimated that, as a result of NYCHA's condition, approximately 23,000 residents experienced heat and hot water outages last week alone.[16]  And winter has not officially begun, yet.  Yesterday alone, nearly 17,000 NYCHA residents experienced heat, water, or hot water outages.[17]  In a news report about yesterday's heat outages, Gothamist republished one of Fight For NYCHA's related tweets, and a spokesperson for the Legal Aid Society predicted that NYCHA residents had been experiencing heat outages that were "very similar to what residents experienced the last two winters."[18]

---

[16]   *See* Elizabeth Kim, *Nearly 23,000 NYCHA Tenants Without Heat, Hot Water Last Week*, Gothamist (18 Nov. 2019), https://gothamist.com/news/23000-nycha-tenants-without-heat-hot-water-last-week.

[17]   *See* Fight For NYCHA, Twitter (19 Nov. 2019, 4:50 PM EST), https://twitter.com/FightForNYCHA/status/1196908725547782146.

[18]   *See* Elizabeth Kim, *More Than 10,000 NYCHA Tenants Go Without Heat, Hot Water In Largest Single Day Outage Of The Season*, Gothamist (19 Nov.

**PRAYER FOR RELIEF**

109.   Plaintiff respectfully requests that the District Court :

a.   Certify that this lawsuit may be maintained as a class-
action under Rules 23(a) and 23(b)(2) of the Federal Rules
of Civil Procedure ;

b.   Declare that all of the Co-Defendants are in violation of the
Open Meetings Law, First Amendment, N.Y. Pub. Housing
Law § 150, and N.Y.C. Charter § 197-C ;

c.   Issue a preliminary and permanent injunction prohibiting
Defendants from continuing to operate the Mayor's NYCHA
Working Group ;

d.   Issue a preliminary and permanent injunction enjoining
Defendants from planning or contracting for the
demolition, rezoning, development, or disposition of any
and all public housing assets, including RAD conversion or
the sale of air rights, outside of the lawful procedure
provided under the ULURP Process ;

e.   Issue an Order compelling Defendants to disclose all
contracts for the disposition of public housing assets that
were not subjected to the ULURP Process ;

f.   Declare that Co-Defendant Brewer acting by and through
Lewis is in violation of N.Y. Penal Law § 240.65 ;

g.   Refer the violation by Brewer acting by and through Lewis
of N.Y. Penal Law § 240.65, and any and all other violations
to a prosecutor for whom significant Government officials
pose no special problems ;

h.   Issue an Order requiring the City to deposit within five (5)
Business Days $3 billion in security with the District Court
and to file within ten (10) Business Days plans to issue
requests for proposals that would contract the purchase
and installation of heating system upgrades to prevent any
further wide-spread heating and hot water outages ; and

i.   Issue an Order granting Plaintiffs' counsel reasonable
attorneys fees and costs, if any, as applicable.

2019), https://gothamist.com/news/more-10000-nycha-tenants-go-
without-heat-hot-water-largest-single-day-outage-season.

Dated :   New York, New York

_20_ November 2019

_George Weaver_
Co-Plaintiff *(Signature)*

_Vera Noseva_
Co-Plaintiff *(Signature)*

George Weaver
Name *(Print)*

VERA   NASEVA
Name *(Print)*

419 West 17 street
Address *(Street)*

425 W. 25st.
Address *(Street)*

419 17 Street 22A 1001
Address *(Apt. No.)*

13D
Address *(Apt. No.)*

419 17 Street 22A 1001
Address *(City, State and ZIP code)*

NY   NY 1000/
Address *(City, State and ZIP code)*

212-2421421
Telephone Number

347 874 8050
Telephone Number

E-Mail *(if any)*

E-Mail *(if any)*

_Luz M Concepcion_
**Co-Plaintiff** *(Signature)*

FIGHT FOR NYCHA

BY: _Marie Helese _____
**Co-Plaintiff** *(Signature)*
as the coordinating committee

_Luz M Concepcion_
**Name** *(Print)*

_fight for NYCHA_
**Name** *(Print)*

_415 West 25th Street_
**Address** *(Street)*

_7522 37th Ave._
**Address** *(Street)*

_3-L_
**Address** *(Apt. No.)*

_#420_
**Address** *(Apt. No.)*

_NY NY 10001_
**Address** *(City, State and ZIP code)*

_Jackson Heights, NY  11372_
**Address** *(City, State and ZIP code)*

_____
**Telephone Number**

_(347) 551-2299_
**Telephone Number**

_____
**E-Mail** *(if any)*

_team@ mg. fightfornycha. org._
**E-Mail** *(if any)*

# Exhibit A

From: **Louis Flores** louis.py.flores@gmail.com
Subject: Re: Fight For NYCHA : Mayor's NYCHA Working Group
Date: November 8, 2019 at 15:08
To: Lewis, Brian (ManhattanBP) BLewis@manhattanbp.nyc.gov
Cc: Progress New York contact@progressnewyork.news, Chaparro, Lizette (ManhattanBP) LChaparro@manhattanbp.nyc.gov,
Mendez, Rosaura (ManhattanBP) RMendez@manhattanbp.nyc.gov, team@mg.fightfornycha.org, Chu, Hally (ManhattanBP)
HChu@manhattanbp.nyc.gov, Mates, Jessica (ManhattanBP) JMates@manhattanbp.nyc.gov

That's non-responsive to my question.

I had to file a Complaint with the U.S. Attorney's Office over this unlawful Working Group, and that Complaint has been shared with some
media with a warning that it is a "hot doc."

Let me remind you about one of the last Complaints I filed with the U.S. Attorney. You can google the fall-out that happened to those
ppl/groups.

LINK : https://observer.com/2014/01/compliant-filed-against-advance-group-for-election-work/

The Feds and the FBI are not above raiding public offices over corruption in public housing. Look at what happened up in Buffalo.

LINK : https://www.wkbw.com/news/local-news/buffalo-city-hall-raided-by-fbi-hud-irs

Please send us the full schedule (date and start time) and location of all meetings of the Mayor's NYCHA Working Group.

When I amend the Complaint with the U.S. Attorney, this e-mail is going in as an Exhibit II.


Louis Flores
louis.py.flores@gmail.com
1 (929) 279-2292

On Nov 8, 2019, at 15:00, Lewis, Brian (ManhattanBP) <BLewis@manhattanbp.nyc.gov> wrote:

Hi Louis,

Thanks for reaching out.

There are three Public Engagement Rounds that will occur:

**Round 1**
- Session 1 – Wed Nov 20th from 6:30-8:30pm @ I.S. 70 Cafeteria – 333 West 17th St
- Session 2 – Thurs Nov 21st from 6:30-8:30pm @ Avenues: The World School – 259 10th
Avenue

**Round 2**
- Session 1 – Wed Dec 4th. Time and location TBD
- Session 2 – Thurs Dec 5th. Time and location TBD

**Round 3**
- Session 1 – Wed Dec 18th. Time and location TBD
- Session 2 – Thurs Dec 19th. Time and location TBD

Please let me know if you have any further questions or concerns.

Best,
Brian

**From:** Progress New York [mailto:contact@progressnewyork.news]
**Sent:** Friday, November 08, 2019 2:21 PM
**To:** Louis Flores
**Cc:** Chaparro, Lizette (ManhattanBP); Mendez, Rosaura (ManhattanBP); Lewis, Brian (ManhattanBP); team@mg.fightfornycha.org; Chu, Hally (ManhattanBP); Mates, Jessica (ManhattanBP)
**Subject:** Re: Fight For NYCHA : Mayor's NYCHA Working Group

Hi,

Can we have the calendar schedule (date and starting time) and location of the remaining meetings of the Mayor's NYCHA Working Group ?

Thank you,
 -- Louis


on behalf of :

Fight For NYCHA
https://fightfornycha.org/
team@mg.fightfornycha.org


Louis Flores
Progress New York
progressnewyork.news
contact@progressnewyork.news
(929) 279-2292

Sent with ProtonMail Secure Email.

# Exhibit B

From: **Lewis, Brian (ManhattanBP)** BLewis@manhattanbp.nyc.gov
Subject: Re: Fight For NYCHA : Mayor's NYCHA Working Group
Date: November 13, 2019 at 11:31
To: Marni marnihalasa@gmail.com
Cc: Fight For NYCHA team@mg.fightfornycha.org, Chaparro, Lizette (ManhattanBP) LChaparro@manhattanbp.nyc.gov,
Mates, Jessica (ManhattanBP) JMates@manhattanbp.nyc.gov, Bartlett, Adele (ManhattanBP) ABartlett@manhattanbp.nyc.gov

Hi Marni,

Thanks for reaching out.

I spoke with the CB4 member who suggested that we get in contact with Fight for NYCHA to clarify that we had appointed a Fulton Houses member to the working group who we had understood would represent Fight for NYCHA.

When I reviewed our office's correspondence with Fight for NYCHA, I noted that we had already explained our position in an email to Fight for NYCHA and Louis Flores in an email from Oct 11, 2019:

"It was important for us to have a variety of viewpoints in our group of stakeholders and Fight for NYCHA certainly figured into how we formed the list. To that end, we included Mary McGee in the Working Group. Our office, along with others, felt it was important that members of the Working group be residents of the Fulton and Elliott-Chelsea campuses since the scope of the working group is limited to those two developments.

If you would like to participate in our public sessions, we will have several. Those will be announced shortly and we can be sure to send you the dates and locations once they are finalized."

I let CB4 know that we had already explained our position and that there weren't any new circumstances we were aware of requiring additional clarity. In addition, I wasn't able to get the contact information for the tenants you refer to as they departed before I was able to address their concerns. That being said, I'm happy to speak with you and/or them directly to provide any further edification necessary.

Regarding the schedule for the working group, I'm happy to share the info on the public engagement forums, see below. For any other information on the Working Group, I'll refer you to our General Counsel, Adele Bartlett, who is cc'ed on this email.

**Round 1**

> Session 1 – Wed Nov 20th from 6:30-8:30pm @ I.S. 70 Cafeteria – 333 West 17th St
> Session 2 – Thurs Nov 21st from 6:30-8:30pm @ Avenues: The World School – 259 10th Avenue

**Round 2**

> Session 1 – Wed Dec 4th. Time and location TBD
> Session 2 – Thurs Dec 5th. Time and location TBD

**Round 3**

> Session 1 – Wed Dec 18th. Time and location TBD
> Session 2 – Thurs Dec 19th. Time and location TBD

> Best,
> Brian

Sent from my iPhone (+1 917-580-0481)

On Nov 13, 2019, at 11:00 AM, Marni <marnihalasa@gmail.com> wrote:

> Hi Brian,
> This most recent article from Chelsea Community News (https://chelseacommunitynews.com/2019/11/07/community-board-4-looks-to-future-outlining-budget-priorities-for-fy-2021/) states that you or a rep from Gale Brewer's office had been instructed by CB4 to reach out to the tenants who spoke and/or present in support at the community board last Wednesday to attend the Mayor's Working Group. I checked with both of them and no one had contacted them.
>
> Both Curly Concepcion and Vera Naseva, as well as us Fight for NYCHA, Marni Halasa and Louis Flores, are interested in attending the working group — especially since they are discussing our proposal, The People's Budget.
>
> Would it be possible for you to send us a schedule of those meetings, thx Marni 9175019444
>
> Sent from my iPhone

On Nov 8, 2019, at 3:01 PM, Lewis, Brian (ManhattanBP) <BLewis@manhattanbp.nyc.gov> wrote:

Hi Louis,

Thanks for reaching out.

There are three Public Engagement Rounds that will occur:

**Round 1**
- Session 1 – Wed Nov 20th from 6:30-8:30pm @ I.S. 70 Cafeteria – 333 West 17th St
- Session 2 – Thurs Nov 21st from 6:30-8:30pm @ Avenues: The World School – 259 10th Avenue

**Round 2**
- Session 1 – Wed Dec 4th. Time and location TBD
- Session 2 – Thurs Dec 5th. Time and location TBD

**Round 3**
- Session 1 – Wed Dec 18th. Time and location TBD
- Session 2 – Thurs Dec 19th. Time and location TBD

Please let me know if you have any further questions or concerns.

Best,
Brian

**From:** Progress New York [mailto:contact@progressnewyork.news]
**Sent:** Friday, November 08, 2019 2:21 PM
**To:** Louis Flores
**Cc:** Chaparro, Lizette (ManhattanBP); Mendez, Rosaura (ManhattanBP); Lewis, Brian (ManhattanBP); team@mg.fightfornycha.org; Chu, Hally (ManhattanBP); Mates, Jessica (ManhattanBP)
**Subject:** Re: Fight For NYCHA : Mayor's NYCHA Working Group

Hi,

Can we have the calendar schedule (date and starting time) and location of the remaining meetings of the Mayor's NYCHA Working Group ?

Thank you,
   -- Louis


on behalf of :

Fight For NYCHA
https://fightfornycha.org/
team@mg.fightfornycha.org

Louis Flores
Progress New York
progressnewyork.news
contact@progressnewyork.news
(929) 279-2292

Sent with ProtonMail Secure Email.